**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 12-cv-2365-WJM-KLM

CLAYBORN CARRIKER, and
DORIS CARRIKER,

    Plaintiffs,

v.

CITY AND COUNTY OF DENVER, COLORADO,
ISS FACILITY SERVICES, INC.,
KIM DAY, in her official capacity as Manager of Aviation,
DAVE LAPORTE, in his official capacity as Deputy Manager of Aviation for Facilities Management, and
JOHN DOE(S), former and current Administrators or Employees of any Airport facility maintained, operated, or controlled by the City & County of Denver or its Dept. of Aviation or ISS FACILITY SERVICES, INC. in their *Respondeat Superior*, individual and official capacities,

    Defendants.

---

**ORDER GRANTING MOTION TO DISMISS**

---

Plaintiffs Clayborn Carriker and Doris Carriker (collectively "Plaintiffs") bring this action against Defendants City and County of Denver, Colorado, ISS Facility Services, Inc., Kim Day, Dave LaPorte, and John Doe(s) (collectively "Defendants"), alleging that Defendants' negligence proximately caused Clayborn Carriker to slip and fall on the premises of the Denver International Airport ("DIA"), causing him injuries, and that Doris Carriker suffered a consequential loss of consortium. (Am. Compl. (ECF No. 11) ¶¶ 18-40.) Before the Court is the Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) ("Motion") filed by Defendants Denver, Kim Day, and

Dave LaPorte (collectively the "Denver Defendants").  (ECF No. 12.)  For the reasons set forth below, the Motion is granted.

## I. BACKGROUND

The following relevant facts as alleged in Plaintiffs' Amended Complaint are undisputed for the purposes of the instant Motion.

Plaintiffs Clayborn Carriker and Doris Carriker are a married couple residing in Florida.  (Am. Compl. ¶¶ 6-8.)  On August 23, 2010, Plaintiffs were traveling by air and changed planes at DIA en route to Iowa.  (*Id.* ¶ 14.)  Upon entering a restroom in Terminal 4 of DIA, Clayborn Carriker allegedly slipped on an unknown slippery substance on the floor and fell.  (*Id.* ¶¶ 16, 22.)  As a result of the fall, he suffered a fractured hip and other injuries.  (*Id.*)  Due to his injuries, Doris Carriker was consequently deprived of her husband's consortium.  (*Id.* ¶ 40.)

Plaintiffs filed their Complaint (ECF No. 1) on September 5, 2012, and their Amended Complaint on October 5, 2012, alleging that Defendants' negligence was the proximate cause of Clayborn Carriker's injuries and Doris Carriker's loss of consortium, and that Defendants are liable under the Colorado Premises Liability Act ("CPLA"), Colo. Rev. Stat. §§ 13-21-115, *et seq*.  (Am. Compl. ¶¶ 32, 40.)  Plaintiffs claim that their injuries were caused by Defendants' negligent failure to maintain the bathroom floor in a safe condition, failure to warn of the danger of the slippery substance on the floor, failure to install and maintain a non-slip surface on the floor, and failure to train and supervise their personnel to maintain the safety of the premises.  (*Id.* ¶¶ 24-29.)

On October 31, 2012, the Denver Defendants filed the instant Motion. (ECF No. 12.) Plaintiffs filed a Response on November 5, 2012. (ECF No. 17.) With leave of Court, the Denver Defendants filed a late Reply on November 16, 2012. (ECF No. 27.)

## II.  LEGAL STANDARD[1]

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1).  Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case.  Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint.  See Castaneda v. INS, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing that federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so).

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." Groundhog v. Keeler, 442 F.2d 674, 677 (10th Cir. 1971).  The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction.  Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking."  See Basso, 495 F.2d at 909.

---

[1] Although the Denver Defendants' Motion is filed pursuant to both Rules 12(b)(1) and 12(b)(6), the Court addresses herein only Rule 12(b)(1) because it is dispositive of the Motion.

### III. ANALYSIS

The Motion argues that Plaintiffs' claims against the Denver Defendants should be dismissed, raising three arguments: (1) Plaintiffs' claims against the Denver Defendants do not fall under any exception to the Colorado Governmental Immunity Act ("CGIA"), and therefore are barred pursuant to Rule 12(b)(1); (2) Doris Carriker's loss of consortium claim and all claims against Kim Day and Dave LaPorte should be dismissed for failure to file a proper Notice of Claim under the CGIA; and (3) Plaintiffs' claim under the CPLA fails to state a claim upon which relief can be granted. (ECF No. 12 at 1.) Because the Court finds that Plaintiffs' claims against the Denver Defendants are barred by the CGIA, the Court will address that argument first.

**A.     Governmental Immunity**

Enacted in 1971 in response to court decisions abrogating common law sovereign immunity, the CGIA codifies governmental immunity from suit in tort cases brought against Colorado public entities and employees. Colo. Rev. Stat. §§ 24-10-101 *et seq.* "Cities and counties are within the [CGIA's] definition of 'public entity.'" *Springer v. City & Cnty. of Denver*, 13 P.3d 794, 799 (Colo. 2000); Colo. Rev. Stat. § 24–10–103(5). However, the CGIA also contains exceptions, waiving immunity for certain cases. *See* Colo. Rev. Stat. § 24-10-106(1). The question of whether governmental immunity under the CGIA has been waived is one of subject matter jurisdiction. *See Trinity Broad. of Denver, Inc. v. City of Westminster*, 848 P.2d 916 (Colo. 1993).

Plaintiffs acknowledge that their tort claims against the Denver Defendants fall under the CGIA. (*See* Am. Compl. ¶ 10 (stating that notice of Plaintiffs' claims was provided to the City and County of Denver pursuant to Colo. Rev. Stat. § 24-10-109, which establishes such notice as a jurisdictional prerequisite for an action under the CGIA).) However, Plaintiffs argue that their claims fall under an exception to the CGIA at § 24-10-106(1)(c), wherein "[s]overeign immunity is waived by a public entity in an action for injuries resulting from . . . [a] dangerous condition of any public building". (ECF No. 17 at 4.) The CGIA defines "dangerous condition" as follows:

> [1] either a physical condition of a facility or the use thereof [2] that constitutes an unreasonable risk to the health or safety of the public, [3] which is known to exist or which in the exercise of reasonable care should have been known to exist and [4] which condition is proximately caused by the negligent act or omission of the public entity or public employee in constructing or maintaining such facility. . . .  A dangerous condition shall not exist solely because the design of any facility is inadequate.

Colo. Rev. Stat. § 24-10-103(1.3). The Denver Defendants contend that Plaintiffs' claims do not fit under the CGIA definition of a "dangerous condition of any public building," and that the Denver Defendants are therefore immune from suit. (ECF No. 12 at 4-9.)

Plaintiffs have pled that the slippery substance on the floor was an unreasonable risk to public safety, that Defendants and/or their employees knew or should have known about the risk, and that Defendants' negligence in failing to maintain the floor, train or supervise their personnel, warn of the danger, or install a non-slip floor surface caused the risk. (*See* Am. Compl. ¶¶ 24-29.) The Denver Defendants do not contest

that these allegations meet criteria (2) and (3) of the definition of "dangerous condition." Rather, the Denver Defendants argue that the alleged dangerous condition was not "a physical condition . . . or the use thereof"[2] of the DIA building, and that Defendants' alleged negligent acts or omissions were not "in constructing or maintaining" the DIA building. (*See* ECF No. 12 at 7-9.)  Therefore, the question before the Court is whether the alleged slippery substance on the floor constitutes a "physical condition" of the DIA building, or the use of a physical condition of the building, which resulted from Defendants' negligent construction or maintenance within the meaning of the CGIA.

The Colorado Supreme Court has had numerous opportunities to interpret the "dangerous condition of a public building" exception to the CGIA.  In *Walton v. Colorado*, 968 P.2d 636 (Colo. 1998), a university building was designed with several feet of space between two ceilings above an art studio, and teachers at the university who had used the space to store art supplies requested assistance from students in cleaning the space.  The plaintiff was injured when she ascended a ladder, unsecured on a floor that had been coated with a slippery finish, to reach the storage space, and the ladder slipped out from under her.  *Id.* at 638.  The Colorado Supreme Court found that the teachers' use of the ceiling space as storage was a use of a physical condition

---

[2] The Colorado Supreme Court has clarified that the phrase "'or the use thereof' means the use of a physical condition of a facility," and that "thereof" refers to the facility's physical condition, not to the facility itself. *Jenks v. Sullivan*, 826 P.2d 825, 827 (Colo. 1992), *overruled on other grounds by Bertrand v. Bd. of Cnty. Comm'rs of Park Cnty.*, 872 P.2d 223 (Colo. 1994).  That is, the "dangerous condition of any public building" exception does not include all injuries resulting from uses of and activities in a public building, but rather covers only "an injury arising from the state of the building itself or the use of a state of the building." *Id.*

of the building, and that the university knew or should have known that its request that members of the public (students) perform a maintenance task (cleaning the space) with a ladder on a slippery floor would result in an unreasonable risk to them. *Id.* at 645. Because all four of the elements of the dangerous condition of a public building exception were met, the exception applied and the public entity was not immune from suit. *Id.*

In contrast, in *Padilla ex rel. Padilla v. School District No. 1 in City and County of Denver*, 25 P.3d 1176, 1181 (Colo. 2001), a teacher's use of a storage closet in a school as a "time-out" area was found not to fall under the immunity exception for a dangerous condition of a public building. The plaintiff was a disabled child who had been put in "time-out" in the storage closet, placed in a stroller propped against the open door. *Id.* at 1178. Once left alone, she became agitated, the stroller fell backward, and the plaintiff hit her head on the hard tile floor. *Id.* The Colorado Supreme Court rejected the plaintiff's attempt to analogize her case to *Walton* by demonstrating that the teacher's improper use of a physical condition of the building—the storage closet used as a "time-out" room—combined with a hard tile floor proximately caused the plaintiff's injuries. *Id.* at 1183. The Colorado Supreme Court held that the plaintiff's claim amounted to an argument that the school "should have upgraded the design of the closet if it wished to use it as a 'time out' room," which exempted it from the definition of "dangerous condition," and that in any event, the alleged negligent acts were unrelated to construction or maintenance of the building.

*Id.* Accordingly, the public entity was immune from suit. *Id.*

Upon comparing the alleged facts in the instant case to those discussed by the Colorado Supreme Court, it is apparent that Plaintiffs here have failed to plead that the cause of their injuries was a "physical condition" of the DIA building or a use thereof. Like *Walton* and *Padilla*, Plaintiffs' Amended Complaint alleges that their injuries resulted from a slippery, hard floor; however, Plaintiffs repeatedly refer to a "slippery substance" or "unknown substance" on the floor, rather than alleging that the floor itself was a slippery surface, as in *Walton*, or that the floor was unsuitable for its use, as in *Padilla*.[3] (*See* Am. Compl. ¶¶ 16, 22, 24.) Plaintiffs' claim alleges not that a misuse of the floor or a defect in the floor itself caused their injuries, but rather that Defendants' negligent failure to maintain a clean and dry floor caused the presence of the slippery substance upon which Clayborn Carriker slipped and fell. (*See* Am. Compl. ¶¶ 22-32.)

Thus, although Plaintiffs sufficiently allege acts or omissions constituting negligence, the allegedly negligent act or omission is not sufficiently connected to a physical condition of the building or a use thereof to meet the definition of the "dangerous condition of a public building" exception to the CGIA. *See Padilla*, 25 P.3d at 1183; *see also Douglas v. City & Cnty. of Denver*, 203 P.3d 615, 618 (Colo. App. 2008) (citing *Padilla* and *Walton* in recognizing that "physical condition" includes structural defects in a building and physical conditions created by constructing or

---

[3] Even if Plaintiffs' Amended Complaint were construed to so allege, their claim would amount to the argument that the floor should have been upgraded—a design flaw that, as in *Padilla*, is exempted from the definition of "dangerous condition." *See Padilla*, 25 P.3d at 1183.

maintaining a building, but not activities in a public building).

The Court recognizes that among Plaintiffs' theories of liability for negligence, they also claim that their injuries were caused by Defendants' negligent failure to install a non-slip surface on the floor of the bathroom. (Am. Compl. ¶ 24(d).) Because the Amended Complaint repeatedly states that a slippery substance on the floor caused the fall, Plaintiffs' argument can be construed as suggesting that a non-slip surface would have prevented Clayborn Carriker's fall because it would have not become slippery even with a slippery substance upon it. (*Id.* ¶¶ 16, 22, 24.) This would seem to present an arguable claim that the floor itself was the physical condition of the building that was unsafe, which would meet the "physical condition" requirement of the "dangerous condition" definition. *See* Colo. Rev. Stat. § 24-10-103(1.3).

Nevertheless, this theory does not change the result of the Court's governmental immunity analysis, because even assuming that a floor surface conducive to slipperiness is not a design flaw but a "physical condition" of the building, Defendants' failure to install a non-slip surface would not meet the fourth requirement of the "dangerous condition" definition. *See id.* A "dangerous condition" that qualifies for a waiver of immunity must allege a negligent act or omission in "maintaining" the building,[4] and an upgrade or improvement to the floor is not "maintenance" under the

---

[4] Plaintiffs' Amended Complaint contains no statements that could reasonably be construed as allegations that the bathroom floor at DIA was negligently "constructed"; therefore, it must have been negligently "maintained" in order to satisfy the CGIA definition of "dangerous condition." *See* Colo. Rev. Stat. § 24-10-103(1.3).

CGIA. *See* § 24-10-103(2.5) ("'Maintenance' does not include any duty to upgrade, modernize, modify, or improve the design or construction of a facility.").

Accordingly, the Court finds that Plaintiffs' claims do not meet the exception in the CGIA for a dangerous condition of a public building, and Plaintiffs are barred by governmental immunity from suing the Denver Defendants for those claims. The Denver Defendants must therefore be dismissed from this action pursuant to Rule 12(b)(1).

**B.     Other Arguments**

The Denver Defendants' Motion alternatively argues that Plaintiffs' claims should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. (ECF No. 12 at 10-11.) As the Court has dismissed all claims against the Denver Defendants for lack of jurisdiction pursuant to Rule 12(b)(1), the Rule 12(b)(6) argument is moot, and the Court need not address it. Similarly, the Court need not address the Denver Defendants' argument that the claims against Kim Day and Dave LaPorte should be dismissed due to Plaintiffs' failure to name them in Plaintiffs' Notice of Claim, or Plaintiffs' failure to allege facts demonstrating that their acts or omissions were willful and wanton. (*See id.* at 4-7.)

The Motion also raised a separate argument with regard to Plaintiffs' loss of consortium claim (ECF No. 12 at 10), which was withdrawn and replaced with a new argument in an Amended Motion to Dismiss, filed on November 15, 2012. (ECF No. 26.) The Court notes that the Denver Defendants filed their Amended Motion to

Dismiss one day prior to filing their Reply, ten days after Plaintiffs had filed their Response, and they apparently asked for neither a stipulation from Plaintiffs nor leave of the Court to amend their Motion at such a late date in the course of the briefing. Although the Court herein grants the Motion and dismisses Plaintiffs' claims against the Denver Defendants, agreeing that the Denver Defendants' arguments prevail as a matter of law, they should not assume that the Court therefore tacitly approves of their late-Amended Motion. Rather, the Court thoroughly rejects the Denver Defendants' Amended Motion, and disapproves of the addition of a new argument *after* Plaintiffs filed their Response, such that Plaintiffs had no opportunity to respond to it.

Further, the Court notes that both the Denver Defendants and Plaintiffs have improperly included Motions for Attorneys' Fees in their briefs; Defendants' request was included in their Motion, and Plaintiffs' in their Response. (ECF No. 12 at 11; ECF No. 17 at 7-8.) Such filings violate both this Court's Revised Practice Standard III.B., which requires that "[a]ll requests for the Court to take any action . . . must be contained in a separate, written motion," as well as D.C.COLO.LCivR. 7.1(c), which states that "[a] motion shall not be included in a response or reply . . . [and] shall be made in a separate paper." Accordingly, the Court has made no finding as to the merits of these requests for fees, which must be filed as separate motions. Nevertheless, the parties are on notice that the Court will not tolerate this kind of gamesmanship, and in future filings, the Court expects all parties to abide by federal and local procedural rules, as well as this Court's practice standards, at peril of sanctions.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. The Denver Defendants' Motion to Dismiss pursuant to Rule 12(b)(1) (ECF No. 12) is GRANTED;

2. All claims against Defendants City and County of Denver, Kim Day, and Dave LaPorte are DISMISSED WITHOUT PREJUDICE, and the Clerk and parties shall update the case caption accordingly;

3. Pursuant to the Court's Order Granting the Denver Defendants' Motion for Stay of Discovery (ECF No. 16) pending the resolution of the instant Motion, the stay of discovery is hereby LIFTED.  The Magistrate Judge shall promptly reset this matter for a Scheduling Conference; and

4. This action remains pending as to Defendant ISS Facility Services, Inc.

Dated this 30th day of May, 2013.

BY THE COURT:

William J. Martinez
United States District Judge