IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 12-cv-2365-WJM-KLM

CLAYBORN CARRIKER, and
DORIS CARRIKER,

    Plaintiffs,

v.

CITY AND COUNTY OF DENVER, COLORADO,
ISS FACILITY SERVICES, INC.,

    Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT DENVER'S RENEWED MOTION TO DISMISS**

---

    Plaintiffs Clayborn Carriker and Doris Carriker (together "Plaintiffs") bring this action against Defendants City and County of Denver, Colorado ("Denver") and ISS Facility Services, Inc. ("ISS") (together "Defendants"), alleging that, as a result of Defendants' negligence, Mr. Carriker was injured when he slipped and fell on the premises of the Denver International Airport ("DIA"), and Mrs. Carriker suffered a consequential loss of consortium.  (Second Am. Compl. ("SAC") (ECF No. 64) ¶¶ 21-41.)  Before the Court are ISS's Motion for Summary Judgment ("ISS's Motion") (ECF No. 96) and Denver's Second Motion to Dismiss Plaintiffs' Second Amended Complaint, Or in the Alternative, for Summary Judgment and Request for *Trinity* Hearing ("Denver's Motion") (ECF No. 97) (together the "Motions").  For the reasons set forth below, both Motions are granted.

## I.  BACKGROUND

The following relevant facts are viewed in the light most favorable to the Plaintiff, and are undisputed except where noted.

Denver owns and operates DIA, and contracts with ISS for the provision of certain custodial services at DIA, including restroom janitorial services.  (*See* ECF Nos. 96-9 & 96-10.)  The contract between Denver and ISS incorporates ISS's proposal of the cleaning duties that would be performed, which states that the floors of the restroom at issue here "should be spot mopped as needed" twelve times per shift during the morning and evening shifts.  (ECF Nos. 96-9 § 2.01; 96-10.)  As permitted by ISS's contract with Denver, ISS subcontracted portions of DIA's janitorial services to Whayne and Sons Enterprises, Inc. ("Whayne") with the same spot mopping requirements as are set forth in the original contract.  (*See* ECF Nos. 96-9 § 7.01; 96-11.)  Pursuant to the subcontract, Whayne was responsible for performing all restroom cleaning in DIA Concourse A from 6:30 a.m. to 10:30 p.m. during the period from September 16, 2007 to September 15, 2012.  (ECF No. 96-11 pp. 1, 10.)

On August 23, 2011, Plaintiffs Clayborn Carriker and Doris Carriker were traveling by air and changed planes at DIA en route to Iowa. (Deposition of Doris Carriker ("D. Carriker Dep.") (ECF No. 98-2) pp. 16-17.)  At or around 2:21 p.m., while entering a restroom in Concourse A, Mr. Carriker slipped on an unknown slippery substance on the floor and fell. (Deposition of Clayborn Carriker ("C. Carriker Dep.") (ECF No. 98-1) p. 23.)  Neither Mr. nor Mrs. Carriker saw any puddle of liquid or other substance on the floor, but both testified that they saw two individuals mopping parts of the restroom floor near Mr. Carriker while he lay on the ground awaiting assistance.  (C.

Carriker Dep. pp. 34-40; D. Carriker Dep. pp. 22-23, 29-32.) As a result of his fall, Mr. Carriker suffered a fractured hip and other injuries. (C. Carriker Dep. pp. 65-66.) Due to his injuries, Mrs. Carriker was deprived of her husband's companionship in various ways. (D. Carriker Dep. pp. 53-56.)

Jim Royston of Western Engineering and Research Corporation, who was hired by Plaintiffs' counsel as an expert in fall accidents, performed an investigation and various tests regarding the site of Mr. Carriker's accident. (ECF No. 99-6.) Mr. Royston testified that the Americans with Disabilities Act ("ADA") recommended a slip-resistance coefficient of 0.60 for a dry floor, but that a floor could be characterized as slip-resistant if its coefficient was greater than 0.5. (*See* Royston Dep. pp. 36-39.) Mr. Royston testified that there was no building code requirement to perform slip testing of a wet floor. (*Id.* p. 37.) According to Mr. Royston's slip tests, the floor of the restroom at DIA where Mr. Carriker's accident took place had an average slip-resistance coefficient of 0.56 when dry, and 0.11 when wet. (ECF No. 99-6 at 5.)

Plaintiffs filed their Complaint (ECF No. 1) on September 5, 2012, and an Amended Complaint (ECF No. 11) on October 5, 2012. Plaintiffs alleged that Defendants were liable under the Colorado Premises Liability Act ("CPLA"), Colo. Rev. Stat. §§ 13-21-115, *et seq*. (ECF No. 11 ¶¶ 24-29.) On May 30, 2013, the Court granted Denver's Motion to Dismiss, finding that Denver was immune from suit because Plaintiffs' claims did not fall into any exception to the Colorado Governmental Immunity Act ("CGIA"), Colo. Rev. Stat. §§ 24-10-101, *et seq*. (ECF No. 41.) On September 16, 2013, the Court granted Plaintiffs' Motion for Leave to Amend the Complaint, and accepted the SAC as filed. (ECF No. 69.) The SAC restated Plaintiffs' claims against

Denver, alleging that Denver had negligently constructed the floor at DIA such that its inherent slipperiness was exacerbated by the unknown slippery substance on it. (ECF No. 64 ¶¶ 25, 27.) On July 22, 2014, the Court ruled on Denver's Renewed Motion to Dismiss, dismissing Plaintiffs' claims for failure to train, supervise, warn, and install a non-slip floor, insofar as those allegations constituted separate claims. (ECF No. 107.) The Court rejected Denver's argument that it was immune from suit because Plaintiffs had failed to give Denver proper notice of their claims under the CGIA. (*Id.* at 4-7.)

Both ISS's and Denver's Motions were filed on April 14, 2014. (ECF Nos. 96 & 97.) Plaintiffs filed Responses to both Motions on May 6, 2014. (ECF Nos. 98 & 99.) ISS and Denver then filed Replies. (ECF No. 100 & 102.)

## II. LEGAL STANDARDS

The Motions are filed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 56. Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case. Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint. *See Castaneda v. Immigration & Naturalization Serv.*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A court lacking jurisdiction "must dismiss the cause at any stage of the

proceeding in which it becomes apparent that jurisdiction is lacking." *See id.* at 909.

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). When considering a Rule 12(b)(1) motion, however, the court may consider matters outside the pleadings without transforming the motion into one for summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).

Summary judgment under Rule 56 is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987).

A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party. *Anderson*, 477 U.S. at 248. The Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## III.  ANALYSIS

While ISS requests summary judgment under Rule 56, Denver raises arguments under both Rules 12(b)(1) and 56, requesting dismissal or, in the alternative, summary judgment.  (ECF Nos. 96 & 97.)  The Court will discuss Defendants' arguments under each Rule in turn.

### A.  Rule 12(b)(1)

Governmental immunity is a jurisdictional issue that must be reviewed under Rule 12(b)(1).  *See Fogg v. Macaluso*, 892 P.2d 271, 276 (Colo. 1995).  Denver raises two arguments that Plaintiffs' claims against it should be dismissed because it is immune from suit under the CGIA: (1) Plaintiffs have failed to comply with the notice provisions of the CGIA; and (2) Plaintiffs have failed to present any evidence on which a jury could rely to find negligent construction of the restroom floor.  (ECF No. 97 at 8-10.)

As to the first argument, the Court has already considered the notices provided by Plaintiffs and found that they satisfied the requirements of the CGIA in the Order on Denver's Renewed Motion to Dismiss.  (ECF No. 107.)  Accordingly, this argument does not support dismissal of Plaintiffs' claims against Denver.

As to Denver's second argument, it argues that Plaintiffs have failed to provide any evidence to support their claim of negligent construction because the testimony of Plaintiffs' expert, Mr. Royston, is insufficient to establish that Denver violated any standard of care in constructing the floor with its current level of slip-resistance.  (ECF No. 97 at 10.)  Therefore, Denver argues, Plaintiffs have no viable claim for which

immunity is waived under the CGIA. (*Id.*)

Denver correctly cites Mr. Royston's deposition testimony that the ADA recommendation of a 0.60 slip-resistance coefficient for a dry floor does not establish a statutory or industry standard, as it is not required for compliance with the ADA. (*See* Royston Dep. p. 39.) However, the ADA recommendation may still be considered by a jury as evidence of the applicable standard of care. *See Gerrity Oil & Gas Corp. v. Magness*, 946 P.2d 913, 931 (Colo. 1997) ("When a legislative enactment or regulation does not define the applicable standard of care, it may nonetheless be relevant evidence bearing on the issue of negligent conduct.") (internal quotation marks omitted). Furthermore, Mr. Royston testified that he performed tests on the floor when wet and found it to be "quite slippery" to the point that it "could be a hazardous condition." (Royston Dep. pp. 35-36, 42.) An expert's testimony is also evidence of the standard of care. *Gerrity Oil*, 946 P.2d at 931. Accordingly, the Court finds that Plaintiffs have presented evidence from which a jury could conclude that the floor in question was constructed in such a way as to be hazardous when wet, and that constructing the floor with such a potential hazard constituted a failure to exercise reasonable care.

Because the Court finds that Plaintiffs have stated a claim for negligent construction and have presented evidence in support of that claim, the Court denies the portion of Denver's Motion that requests dismissal under Rule 12(b)(1).

**B.     Rule 56**

Under the CPLA, a landowner is liable to an invitee for damages caused by the

landowner's "unreasonable failure to exercise reasonable care to protect against dangers of which he actually knew or should have known." Colo. Rev. Stat. § 13-21-115(3)(c). For the purposes of the Motions, both Defendants concede that they were landowners and that Plaintiffs were invitees under the CPLA. (ECF Nos. 96 at 10; 97 at 11.) Among other arguments, both Defendants contend that summary judgment is warranted because Plaintiffs have failed to present any evidence that either Defendant had actual or constructive knowledge of the potential danger. (ECF Nos. 96 at 11-13; 97 at 11-12.)

For the purposes of this discussion, the Court assumes that both ISS and Denver had a duty to Plaintiffs as invitees under the CPLA.[1] Although both Defendants hired contractors to perform some portion of the maintenance duties at DIA, Colorado law permits an independent contractor's negligence to be imputed to the landowner under the CPLA "if that negligence created a danger to invitees and if [the landowner] knew or should have known of the danger". *Kidwell v. K-Mart Corp.*, 942 P.2d 1280, 1282 (Colo. App. 1996). Thus, to hold Defendants liable under the CPLA, Plaintiffs

---

[1] ISS contends that any duty that it had as a landowner under the CPLA was delegated to Whayne pursuant to the subcontract, distinguishing its situation from those cases holding that the landowner's duty is non-delegable. (ECF No. 96 at 13-15 (citing *Kidwell v. K-Mart Corp.*, 942 P.2d 1280, 1282 (Colo. App. 1996) ("[T]he obligation of the landowner in possession of property to maintain the premises in a safe condition for invitees may not be delegated to an independent contractor."); *Reid v. Berkowitz*, 315 P.3d 185, 191-92 (Colo. App. 2013); *Jules v. Embassy Props., Inc.*, 905 P.2d 13, 15 (Colo. App. 1995)).) ISS argues that its landowner status stemmed from a contract rather than a possessory interest, and therefore it is not a "landowner in possession of property" and may permissibly delegate its duty. (*Id.*) The Court has reviewed the cited cases and finds that none of them explicitly identify the possessory interest as the reason that this duty is non-delegable. Thus, it is not clear from the cited authority that ISS can permissibly delegate the entirety of its duty under the CPLA, and the Court will assume for the purposes of this analysis that ISS's duty was not delegated to Whayne.

must show that Defendants "actually knew or should have known" of the potential danger to invitees. Colo. Rev. Stat. § 13-21-115(3)(c); *see also Sofford v. Schindler Elevator Corp.*, 954 F. Supp. 1459, 1462 n.4 (D. Colo. 1997) (citing *Kidwell* and holding that even if a contractor knew of the dangerous condition, "no authority exists for imputing this knowledge to [the landowner] . . . . Thus plaintiff must still present evidence that [the landowner] knew or had reason to know of the elevator condition in order to avoid summary judgment.").

As to ISS, Plaintiffs have presented testimony that both Mr. and Mrs. Carriker saw unidentified employees mopping the floor at the scene of the accident.[2] (*See* C. Carriker Dep. pp. 34-40; D. Carriker Dep. pp. 22-23, 29-32.) Plaintiffs argue that their testimony about seeing unidentified employees mopping could support the conclusion that ISS employees were aware that there was liquid on the floor which created a dangerous condition. (ECF No. 98 at 10.) However, Plaintiffs do not dispute that, pursuant to the subcontract, the only individuals that were performing custodial services in the restroom at issue at the time of the accident were employees of Whayne. (*See* ECF Nos. 96-8 ¶ 3; 96-11 pp. 1, 10.) Thus, viewing the evidence in the light most favorable to Plaintiffs, the presence of individuals mopping the floor permits the inference that Whayne was aware of the dangerous condition. However, Plaintiffs have pointed to no evidence supporting an inference that ISS knew or should have known of

---

[2] The Court notes that, in addition to their own testimony, Plaintiffs have also presented the testimony of a DIA operations manager that an unidentified security guard reported having seen ISS employees cleaning the restroom floor at the scene of the accident. (Deposition of John Rumpf (ECF No. 98-3) pp. 10, 20.) The Court has not considered this evidence in support of Plaintiff's argument, as it is inadmissible hearsay. *See* Fed. R. Evid. 801-803.

the dangerous condition.[3]  Accordingly, the Court finds that Plaintiffs cannot succeed on their CPLA claim against ISS as a matter of law.

Plaintiffs have also failed to present any evidence as to Denver's actual or constructive knowledge of the alleged dangerous condition.  Plaintiffs' sole argument with respect to Denver's knowledge is that "ISS, and by extension Denver, should have known that there was liquid on the restroom floor."  (ECF No. 99 at 10.)  However, even if Plaintiffs had succeeded in presenting evidence of ISS's knowledge of the dangerous condition, Plaintiffs have presented no basis on which to impute such knowledge to Denver.  *See Sofford*, 954 F. Supp. at 1462 n.4.

Plaintiffs argue that multiple landowners may each be held liable on the basis of relative fault (*see* ECF No. 98 at 9), but they present no factual support for either Defendant's actual or constructive knowledge of the dangerous condition.  Accordingly, there is no dispute of material fact as to Denver's liability under the CPLA, and summary judgment is appropriate in both Defendants' favor as to Plaintiffs' CPLA claim.  *See* Colo. Rev. Stat. § 13-21-115(3)(c).

As to Mrs. Carriker's loss of consortium claim, Defendants each argue that summary judgment should be granted because the consortium claim is derivative of the CPLA claim.  (ECF Nos. 96 at 16-17; 97 at 12-13.)  Plaintiffs do not dispute the derivative nature of this claim.  (ECF No. 98 at 12 (citing *Schwindt v. Hershey Foods Corp.*, 81 P.3d 1144, 1148 (Colo. App. 2003)).)  The Court finds that, as a matter of

---

[3] Plaintiffs' citations to the contract between ISS and Denver are irrelevant, as the cited provisions merely set forth indemnification and insurance requirements with respect to subcontractors.  (ECF No. 98 at 8.)  Such provisions do not permit the Court to impute Whayne's knowledge to ISS.  *Cf. Sofford*, 954 F. Supp. at 1462 n.4.

law, the loss of consortium claim cannot be sustained without the CPLA claim, and thus summary judgment is appropriate as to the loss of consortium claim.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. ISS Facility Services' Motion for Summary Judgment (ECF No. 96) is GRANTED;

2. The City and County of Denver's Motion for Summary Judgment (ECF No. 97) is GRANTED;

3. ISS Facility Services' Motion to Exclude Expert Testimony (ECF No. 101) is DENIED AS MOOT; and

4. Judgment shall be entered against Plaintiffs and in favor of Defendants on all claims.  Defendants shall have their costs.

Dated this 23rd day of October, 2014.

BY THE COURT:

William J. Martinez
United States District Judge